UNITED STATES DISTRICT COURT
SOUTHWESTERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **RICHARD GOETTLE, INC.** : | Case No. 1:10cv187 |
| **Plaintiff,** : | Judge Dlott |
| : | |
| vs. : | **MOTION FOR TEMPORARY** |
| : | **RESTRAINING ORDER AND** |
| **HAMILTON COUNTY, OHIO** : | **PRELIMINARY INJUNCTION** |
| **BOARD OF COMMISSIONERS ET** : | |
| **AL.** : | |
| : | |
| **Defendants** : | |

The Plaintiff, Richard Goettle, Inc. ("Goettle") pursuant to 17 U.S.C § 502, and Rule 65 of the Federal Rules of Civil Procedure, respectfully moves this Court for a Temporary Restraining Order and Preliminary Injunction enjoining the Defendants from directly or indirectly using the permanent earth retention design dated 2-5-10 stamped as prepared by Defendant Burgess & Niple, Inc. ("Burgess & Niple") for The Banks-Phase 2 Bid Package 9 (the "B&N Phase 2 Design") for The Banks-Phase 2 Project or otherwise. As discussed in the Supporting Memorandum which follows, Defendants infringed Goettle's registered copyright in Goettle's Alternate Phase 1 Bid Package 4 permanent earth retention design dated 2-6-09 ("Goettle's Alternate Phase 1 Design") when Burgess & Niple prepared the B&N Phase 2 Design by simply copying and appropriating Goettle's copyrighted design and the other Defendants copied and/or used same. Goettle is entitled under 17 U.S.C § 502 to injunctive relief to prevent such infringement and restrain further infringement thereof.

Goettle also bases this Motion upon the violation of Goettle's express use restriction set forth on Goettle's Alternate Phase 1 Design prohibiting its use without the

prior written consent of Goettle, which it has not given to the Defendants.

## MEMORANDUM IN SUPPORT

### I. STATEMENT OF FACTS[1]

Goettle is a corporation organized under the laws of the State of Ohio with its principal place of business in Hamilton County, Ohio. Goettle has been engaged is engaged in the business of earth retention, marine construction, deep foundation construction and related services for over fifty years. Goettle's President/CEO, Doug Keller is a licensed Ohio Professional engineer with a master's degree in civil engineering from the University of Cincinnati and has been engaged in Goettle's business for over 21 years.

Defendant Hamilton County, Ohio Board of Commissioners ("Hamilton County"), Defendant the City of Cincinnati (the "City"), and Defendant Riverbanks Renaissance, LLC (Riverbanks Renaissance") are jointly developing The Banks Development Project in Hamilton County (the "Project")

As part of the Project, Hamilton County solicited bid proposals for The Banks Bid Package 4 Earth Retention ("The Banks-Phase 1 Project") in 2008. Goettle submitted a subcontract bid proposal on October 20, 2008 with Goettle's Alternate Phase 1 Design. A full-size copy of Goettle's Alternate Phase 1 Design is approximately 30" x 40" in size and is too large to attach as an exhibit hereto. A copy thereof will be provided to the Court and to the Defendants as necessary or requested.

Burgess & Niple is a civil engineering company with its principal office in Cincinnati, Ohio. Burgess & Niple was retained by Hamilton County and/or the City as

---

[1] The factual statements made in this Memorandum are supported by the sworn testimony on Doug Keller, President/CEO of Goettle, as set forth in Goettle's Verified Complaint and by his verification of the facts set forth in this Memorandum.

Engineer for The Banks – Phase 1 Project. As such Burgess & Niple prepared a costly sheet pile design dated 9-2-08 for the permanent earth retention for The Banks-Phase 1 Project (the "B&N Phase 1 Design"). A full-size copy of the B&N Phase 1 Design is approximately 30" x 40" in size and is too large to attach as an exhibit hereto. A copy thereof will be provided to the Court and to the Defendants as necessary or requested. Burgess & Niple was opposed to Goettle's Alternate Phase 1 Design and were obstructionists during the review process. Goettle's Alternate Phase 1 Design was, after much input from Goettle, accepted by Hamilton County and/or the City and Goettle was awarded a subcontract for the permanent earth retention work in The Banks-Phase 1 Project. Goettle performed its work and installed a permanent earth retention system for The Banks-Phase 1 Project.

Hamilton County, the City and/or Riverbanks Renaissance retained Burgess & Niple as the Engineer for The Banks Project-Phase 2. Burgess & Niple submitted a design for the permanent earth retention work for Bid Package 9 (the "B&N Phase 2 Design") and stamped its design as prepared by Burgess & Niple. A full-size copy of the B&N Phase 2 Design is approximately 30" x 40" in size and is too large to attach as an exhibit hereto. A copy thereof will be provided to the Court and to the Defendants as necessary or requested.

The B&N Phase 2 Design is virtually a verbatim copy of Goettle's Alternate Phase 1 Design. It was prepared by Burgess & Niple by simply lifting, copying and appropriating Goettle's Alternate Phase 1 Design details as its own design without Goettle's knowledge or consent. The B&N Phase 2 Design copied Goettle's Alternate Phase 1 Design virtually verbatim down to the smallest design detail.

Hamilton County solicited bid proposals for The Banks-Phase 2 Bid Package 9. Bid Package 9 was dated October 19, 2009. Goettle was not aware of the appropriation by the Defendants of Goettle's proprietary concept, design and design details until approximately one week before the bid proposals had to be submitted by prospective general contractors for The Banks-Phase 2 Bid Package 9 work.  Upon becoming aware the Defendants had appropriated Goettle's Alternate Phase 1 Design, Goettle wrote a letter to Hamilton County and the City to make them aware of such unauthorized appropriation and to advise them that Goettle would protest such appropriation if it were not a successful subcontractor for the permanent earth retention work for Bid Package 9 and, in such case, would take appropriate legal action to prevent the use by others of its design.

Defendant Prus Construction Co. ("Prus") is the successful general contractor who was awarded a prime contract by the County and/or the City for Bid Package 9.

Goettle submitted a bid proposal to Prus for the permanent earth retention work (the "Work") included in Bid Package 9. Goettle was not a successful subcontractor for the Work.  See the letter dated February 25, 2010 from Prus, which was attached to the Verified Complaint as Exhibit C.  Prus has awarded a subcontract for the permanent earth retention work for The Banks-Phase 2 to a subcontractor other than Goettle to use the B&N Phase 2 Design.

Goettle obtained a federal registration, No. VAu001013351, effective February 26, 2010 for Goettle's copyright in the Goettle Alternate Phase 1 Design, which is titled as "The Banks B.P. 4 Earth Retention". A copy of the Certificate of Registration for such copyright was attached to the Verified Complaint as Exhibit A.  The use by Defendants

4

of the B&N Phase 2 Design in The Banks- Phase 2 Project constitutes an infringement of Goettle's copyright.

In addition to its copyright, Goettle's Alternate Phase 1 Design drawings set forth an express restriction thereon which stated "This drawing and the design and information contained therein are and shall remain the confidential and proprietary work product of Richard Goettle, Inc. and shall not be used by any person without its prior written consent and shall be returned to it upon demand". Goettle has not consented to the use of Goettle's Alternate Phase 1 Design by the Defendants for the Bid Package 9 permanent earth retention work in The Banks-Phase 2 Project. For the reasons given above, Defendants' use of the B&N Phase 2 Design violates the use restrictions set forth on Goettle's Alternate Phase 1 Design.

In light of the foregoing, Defendants intend to and will use B&N Phase 2 Design in The Banks Phase 2 Project in violation of Goettle's copyright and of the use restrictions set forth on Goettle's Alternate Phase 1 Design. This will cause irreparable harm to Goettle unless temporary, preliminary and permanent injunctions are issued by this Court enjoining and restraining the use the B&N Phase 2 Design on The Banks-Phase 2 Project.

Upon information and belief, the Work for the permanent earth retention system under Bid Package 9 has not yet started.

**II.     ARGUMENT-COUNT ONE FOR COPYRIGHT INFRINGEMENT**

Goettle has a registered copyright in the Goettle Alternate Phase 1 Design (the "Copyrighted Work"). By virtue of such copyright Goettle has the <u>exclusive</u> right to reproduce the copyrighted work, prepare derivative works based upon its copyrighted

work and to distribute the copyrighted work. See 17 U.S.C. § 106.

While Goettle registered its copyright prior to bringing this suit, it did so after discovering Defendant's infringement. Nonetheless, pre-infringement registration is only necessary to recover statutory damages and attorney fees, not the remainder of available remedies. 17 U.S.C. § 412. A remedy for infringement of a copyrighted work is expressly set forth in 17 U.S.C. § 502(a), which provides in pertinent part:

> "Any court having jurisdiction of a civil action under this Title, subject to the provisions of Section 1498 of Title 28[2], grant <u>temporary and final injunctions</u> on such terms as it may deem reasonable to prevent or restrain infringement of a copyright" (Emphasis added).

This provision provides the right to injunctive relief to prevent or restrain the infringement by Defendants here of Goettle's Copyrighted Work upon the showing of infringement. Goettle must meet the following criteria in order for the Court to enter a preliminary injunction in its favor:

> A district court, when determining whether to issue a preliminary injunction, should address four factors: 1) the likelihood of success on the merits of the action; (2) the irreparable harm that could result if the court did not issue the injunction; (3) the impact on the public interest; and (4) the possibility of substantial harm to others.

*Forry v. Neundorfer*, 837 F.2d 259, 262, 5 U.S.P.Q.2d 1510 (6th Cir. 1988). In order to show likelihood of success on the merits, Goettle is required to show only the existence of a prima facie case for copyright infringement. This includes ownership of a copyright registration, access to the copyrighted work by the Defendants, and substantial similarity between the copyrighted work and the infringing work. *Id*. Further, "a plaintiff in a copyright infringement action establishes a rebuttable presumption of irreparable harm by showing that its valid copyright has been infringed." *Id*. at 267.

---

[2] Section 1498 of Title 28 has to do with injunctive relief against the United States and, therefore, is not applicable here.

In one recent case, an architectural firm was successful in obtaining a preliminary injunction based on copyright infringement where a developer exceeded the scope of a license to use specific architectural plans for a housing development. *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1152 (9th Cir. 2006). In that case, the plans were initially submitted for use with regard to one project, but the developer decided to use the plans for a second project without the consent of the architect. *Id*. The architect filed suit for injunction, and the district court denied the injunction on the grounds that the architect did not have a likelihood of success on the merits. *Id*. The appellate court reversed, finding that the architect had a likelihood of success on the merits because the developer clearly exceeded the limits of the defined scope of the licensing agreement. *Id*. at 1157.

In the case at bar, the facts are even more cut and dry. Burgess & Niple did not exceed any license agreement because <u>it did not have one</u>. Instead, it merely pilfered Goettle's copyrighted designs when it accessed the designs that had already been submitted by Goettle, willfully ignored the notice of Goettle's proprietary rights and copyrights included on the documents themselves, and lifted nearly "verbatim" the plan designs and language for its own infringing submission. This set of facts clearly establishes a prima facie case of copyright infringement.

Moreover, where architectural features by a builder are "substantially similar" to those depicted in copyrighted architectural plans and where it can be shown that the builder had access to those copyrighted plans, such evidence establishes copyright infringement. *Ronald Mayotte & Assoc. v. MGC Bldg. Co.*, 885 F. Supp. 148, 152 (E.D. Mich. 1994) (citing *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274, 275 (6th

Cir. 1988)). The district court found that the plaintiff had established the likelihood of success on the merits and, thus, irreparable harm, and turned to the remaining two factors. *Id.* at 153. It ultimately granted the injunction, finding that (1) the need for the injunction outweighed harm to the defendants where the actual construction had not yet been performed and (2) it was "virtually axiomatic" that the public interest would be served by upholding copyright protection and encouraging creativity. *Id.* Nearly the exact same factual and legal analysis may be performed in this case, which leads to the same conclusion – that this Court should enter an injunction against Defendants.

The following facts set forth and establish copyright infringement, in greater detail, by the Defendants.

As the Project Engineer for the Phase 1 Bid Package 4 earth retention work. Burgess & Niple was presented a design problem to solve; i.e., how to design a permanent earth retention system that could support the loads created by lateral earth forces with minimal space for tieback anchors. Since the face of the new wall would be exposed to the public, part of the solution also included providing an architecturally pleasing concrete facing, covering the steel sheet pile and anchor heads. The design solution created by Burgess & Niple consisted of solid metal sheets ("sheet pile") with tie back anchors penetrating through the metal sheets. This solution would have required walers ((a large structural element used to distribute load from one component to another) between the back face of the tie back anchor and the outer face of the sheet pile. Using walers would have resulted in a very thick and costly concrete outer facing (the B&N Phase 1 Design").

Bid Package 4 requested subcontractors to submit a bid price to install the B&N

Phase 1 Design and to submit any alternate design the subcontractor desired. Goettle submitted a bid proposal for the B&N Phase 1 Design and also submitted the Goettle Alternate Phase 1 Design. The latter was totally different from the B&N Phase 1 Design. It was Goettle's unique solution to a given set of problems. In a design/build situation every civil engineer's solution is his unique answer to the engineering problems presented. Such engineer has a laundry list of possible ways to solve each of the engineering issues presented based upon his own particular experiences; i.e., what has worked for him in the past and what is required for a particular site. Goettle took a fairly common earth retention system (soldier pile and wood lagging system) and tailored it to the demands of the Project. In order to save money and have a thinner concrete facing, which produces a less expensive and more architecturally pleasing retaining wall, Goettle decided to use a double element soldier pile system instead of the more traditional single H-pile system. This would allow for the use of a recessed anchorage necessary for the larger diameter and shorter tieback anchor. These details further allowed Goettle to attach the temporary wood lagging to the outer face of the soldier piles (the temporary wood lagging is required to safely excavate prior to placing the permanent concrete facing). The result was a unique Goettle design that provided a thinner concrete facing with the required load capacity without the tieback anchor heads protruding beyond the outer face of the wood lagging.

Burgess & Niple had two options: 1) indicate that a permanent earth retention system was required at specific locations and allow design/build contractors to design a retention system to meet the project demands, or 2) design a system of their own to include in the project bid documents. Burgess & Niple opted for the latter. Rather than

9

design its own solution to The Banks-Phase 2 Bid Package 9 earth retention problems, however, Burgess & Niple took Goettle's Copyrighted Work, which it had access to and opposed in Phase 1, copied it almost verbatim, and stamped it as its own design for Phase 2. This conclusion is immediately obvious to any engineer when the two designs are compared. To illustrate this point Goettle has prepared six drawings for the Court's review which place some of the design details from the B&N Phase 2 Design right next to those from the earlier Goettle's Alternate Phase 1 Design. Such drawings were attached to the Verified Complaint as Exhibits hereto Exhibit B 1-6.

Before reviewing each such Exhibit it is important to understand how construction design drawings are prepared. There is no set methodology for a draftsman to follow in preparing his design detail for a design drawing. The draftsman is simply given a large number of design details to be set forth on the drawings in whatever way and in whatever order his experience dictates. Consequently, no draftsmen prepare design details in the same way. See Affidavit of Greg Hill attached hereto and made a part hereof as Exhibit D. In fact, if three draftsmen at Goettle were given the same design details to be shown on the same set of design drawings, the design details prepared and set forth by each for the same drawings would contain all the required information but may look totally different. For example, no two draftsmen put the design notes on the same side of the drawing. No two draftsmen working independently from one another would decide to display design blow-ups in the same location on a drawing. No two draftsmen call out the dimensions of the same brace among identical braces in the same design element. No two draftsmen use exactly the same terminology for their design notes. See Affidavit of Greg Hill.

With the foregoing facts in mind, a review of each of Exhibits E 1-6 will establish beyond any doubt that Burges & Niple simply copied Goettle's Copyrighted Work down to the smallest design detail.

1. **Exhibit E 1 Soldier Pile Detail.**

Please note the following facts:

(i) the same location <u>at the top of each drawing</u> of the detail of the Strap Plate information. Note the same 20"x3"x1/2" strap plates are used. The note for same is on the right side of the detail on both drawings.

(ii) the same location on each drawing of the note for the soldier piles (at the top of the soldier piles). It could have been at the bottom.

(iii) the Burgess & Niple drawing detail calls out the same two structural shapes for supporting the tieback anchor head with the same note and the same C8x13.75 channels. Such note is on the right side of both drawings.

(iv) the particular strap called out is in the same location on both drawings (the third from the top on the soldier piles) and is 20"x3"x1/2" on both drawings. Burgess & Niple could have picked a different strap for such note, but did not do so. The note is also on the right side of both drawings.

(v) the blowup and location of the note for the fillet weld is exactly the same on both drawings except for the size of the soldier pile. The size of the ¼" fillet weld and the language of the note for such weld are exactly the same on both drawings. Such note is on the same side in both drawings.

**2. Exhibit E 2 Typical Wall Section.**

Please note the following facts:

(i) both drawings require the same (10) #7 bars full length and the location of the note for such bars is the same on both drawings. The language of such note is virtually identical language and on the right side of both drawings.

(ii) the same 2" top clearance and 3" right side clearance on both drawings. The notes for same are also on the right side.

(iii) the use of 3" wood lagging on both drawings.

(iv) the same location of the note for the #5 @10" each face vertical on both drawings  The Burgess & Niple Detail selected the same two points identified by arrows on the Goettle drawing as opposed to any of the other locations for same. Such Note uses identical language and on the right side in both drawings.

(v) the same ¾" Dia x 12" long Threaded Stud with 2 nuts and lagging plate are required on both drawings. The language quoted is identical, and the note for same is on the right side, in both drawings.

(vi) the same 2'wide x1' high dimensions with the same (3) #5 cont. note. That note is also on the right side.

(vii) the same Std. 5/8"dia. A307 threaded Stud w/5/8" nut is required on both drawings. The language of the Note is virtually identical and on the right side in both drawings. There is nothing exceptional about a 5/8" dia. A307 stud that makes it an industry standard. The Goettle drawings are labeled "Std." to indicate that this is the stud detail typically used by Goettle.

**3. Exhibit E 3.**

Please note the following facts:

(i) the same three details are set forth on the same page and in the same order on both drawings. They could have been and generally are placed on different pages.

(ii) the Contraction Joint Detail is the top detail on both drawings. This could have been done in a different order. The contraction joint identified has the same dimensions, and is specified for the same 30' intervals, on both drawings.

(iii) the Expansion Joint Detail calls for the same 6" waterstop, ½" expansion join material and continuous bead of sealant on both drawings.

(iv) the Horizontal Reveal Detail is also vertically identical on both drawings.

**4. Exhibit E 4 Typical Wall Section @ Weep Hole.**

Please note the following facts:

(i) the language used is identical on both drawings for the caption for such detail.

(ii) the dimensions of the wall section are identical on both drawings

(iii) both drawings have the same 1' Joint/Texture Allowance Note on the right side.

(iv) both drawings have an identical "Theoretical Back of Wall" Note on the left side. By noting a theoretical back of wall, a construction tolerance is assumed. Goettle experience minimizes this tolerance and is a unique feature Goettle provides. Such construction tolerances are not addressed by the project engineer.

(v) the location and size of the 4' wide prefabricated geocomposite drain are the same on both drawings.

(vi) the same exact language for a "Drain Great w/ Reducer Bushing" on both drawings. Normally, grate is spelled "grate" and not "GREAT". This is a particular manufacturer's tradename for the product, which upon information and belief, Burgess & Niple has never used or heard of before. It just copied what is set forth on Goettle's Copyrighted Work.

**5. Exhibit E 5 Wall Section.**

This Section is a larger section of the wall with less detail than Exhibit E 2. Please note the following facts:

(i) the same ¾" x 12" long threaded stud with 2 nuts and lagging plate on both drawings.

(ii) the same 3" wood lagging on both drawings.

(iii) the same size 4' wide geocomposite drain on both drawings.

(iv) the same Std. 5/8"dia. A307 Threaded stud w/5/8"Nut on both drawings.

**6. Exhibit E 6 Expansion Joint Detail and Anchorage Detail.**

Please note the following facts:

(i) the expansion joint detail is presented at the top of both drawings.

(ii) the expansion joint detail is the same on both drawings. This was Goettle's design a year earlier in Phase 1. This end wall detail is specific to one site only, the Phase 1 site. There is no way of knowing if this detail is correct or workable for the new work at the Phase 2 site. The concept may be OK, but the specifics may not be. Burgess & Niple did not have to provide this detail but, since it already had it from Goettle's earlier drawing, it just copied it and included it in its stamped design. It is a verbatim copy of Goettle's unique design to connect the new wall to the existing MSE

wall.

(iii)   Anchorage details are specific to the project and to each contractor's installation methods.  They are seldom highly detailed by the project engineer.  The level of detail provided by Burgess & Niple is highly unusual.  Despite the foregoing, the anchorage detail is virtually the same on both drawings.  It is clear that Burgess & Niple simply copied Goettle's presentation of the anchor detail.

Based upon tithe above review of the design detail shown in Exhibits B 1-6, only one conclusion can be reached. Burgess & Niple copied Goettle's Copyrighted Work. Burgess & Niple and the other Defendants have infringed, and/or will further infringe Goettle's Copyrighted Work, unless restrained by order of this Court.  Based upon the Copyright statute, Goettle respectfully submits that it has proven infringement of its Copyrighted Work by the Defendants and is entitled to the requested injunctive relief.

### III.   ARGUMENT-COUNT TWO FOR VIOLATION OF USE RESTRICTIONS

Goettle placed a use restriction on the Goettle Alternate Phase 1 Design which expressly provided that such design was and would remain solely Goettle's property and could not be used without Goettle's prior consent.  Goettle did not and does not now consent to the use of such design by the Defendants.  Accordingly, the Defendants' actions constitute a breach of Goettle's restriction on The Goettle Alternate Phase 1 Design drawings.

Similar to the elements that must be established for claims of copyright infringement, Rule 65 requires this Court to consider several factors before issuing a preliminary injunction:   1) the likelihood of the plaintiff's success on the merits; 2) whether the plaintiff will suffer irreparable injury without the injunction; 3) the harm to

others which will occur if the injunction is granted; and 4) whether the injunction would serve the public interest. *Fifth Column, LLC v. Village of Valley View*, 221 F.3d 1334, *8 (table) (6th Cir. 2000). Because Goettle can demonstrate the existence of each of the requisite elements, it is entitled to a temporary Restraining Order and Preliminary Injunction.

### A. Likelihood of Success on the Merits.

Goettle respectfully submits that the evidence presented above to establish the copying of Goettle's Copyrighted Work also establishes that the Defendants have copied and used the same Goettle Alternate Phase 1 Design without its consent in violation of the use restrictions on such drawings.

### B. Irreparable Harm.

If the requested injunctive relief is not granted to Goettle and the Defendants are permitted to proceed with the use of the B&N Phase 2 Design, Goettle will be irreparable harmed thereby. If such relief is not granted, Goettle will be powerless to prevent the use of its proprietary design on this and other projects. It will have irretrievably lost its design and design details which will be used repeatedly without limit by the Defendants and its competitors. Goettle devoted substantial time, money and engineering resources and over fifty years of experience in developing the design and design details that are set forth in Goettle Alternate Phase 1 Design. Monetary relief is an insufficient remedy and cannot prevent the repeated violations of Goettle use restrictions placed on such design.

**C. Issuance of the Injunction Will Not Cause Harm to the Defendants that Outweighs the Harm to Goettle if the Injunction is Not Granted.**

Granting Goettle's requested injunctive relief will not cause undue harm to the Defendants. The permanent earth retention work required by The Banks-Phase 2 Bid Package 9 is not scheduled to start until early in 2011. Accordingly, Defendants have ample time to obtain a workable permanent earth retention design for such work that does not infringe Goettle's copyright or violate the use restrictions set forth on the Goettle Alternate Phase 1 Design.

**D.     The Public Interest Will Be Served If Injunctive Relief Is Granted.**

What happened here is absolutely clear. Burgess & Niple copied, appropriated and stamped as its own a design that was created and belonged to Goettle, all in violation of the Ohio Engineering Code of Ethics. Such conduct cannot be tolerated and certainly cannot be rewarded. If such conduct is not enjoined here, then the Ohio Engineering Code of Ethics will have no meaning. Goettle has not seen such blatant engineering misconduct in the 56 years that it has been in business. It does not take lightly the claims that it has filed against the Defendants in this action. The public's interest will not be served by allowing the Defendants to profit from the appropriation of an engineer's design. In fact, the contrary is true. It is inherently dangerous to allow such conduct because it will encourage unqualified engineers to simply appropriate, and pass off as their own, designs of which they have no knowledge or understanding. One size does not fit all. It is imperative that the design of buildings and other structures be designed by competent engineers for the particulars conditions and problems each case presents. To proceed otherwise invites disaster and the loss of property and life.

## IV. CONCLUSION

Goettle has established its registered copyright and the infringement thereof by the Defendants. Accordingly, Goettle is entitled by statute to appropriate injunctive relief to prevent the use of its Copyrighted Work and further infringement thereof.

The same conduct of the Defendants that establishes their infringement of Goettle's Copyrighted Work establishes their violation of the use restrictions intentionally set forth on such drawings. Goettle has met the four prerequisites for a Temporary Restraining Order and Preliminary Injunction. It has proven a probability of success on the merits because the Defendants have violated such restriction. Goettle will be irreparably harmed if the Court does not grant the requested injunctive relief as it will have way of preventing the continued use of its proprietary design by the Defendants and its competitors.

The harm to Goettle clearly outweighs any potential harm to Defendants if injunctive relief is granted. The Defendants have ample time to obtain a new design for such permanent earth retention work.

The public interest will be served by granting injunctive relief to Goettle. It will prevent the further and future violations of the Ohio Engineering Code of Ethics which has been clearly violated by Burgess & Niple. Such violation cannot be rewarded by allowing the Defendants to profit therefrom.

In light of the foregoing, Goettle respectfully requests that the Court issue a temporary Restraining Order and Preliminary Injunction and Permanent Injunction enjoining and restraining Defendants from directly or indirectly using the Burgess & Niple Phase 2 Design for The Banks-Phase 2 Project or thereafter.

_____
Roger W. Healey
Ohio Reg. No. 0004809
Trial Attorney for Plaintiff
12071 Hamilton Avenue
Cincinnati, OH 45231
(513) 825-8100
(513) 825-8107 (fax)
rhealey@goettle.com

## VERIFICATION

I, Doug Keller, President/CEO of Richard Goettle, Inc. hereby verify that I have read the factual allegations set forth in the foregoing Motion and that they are true and correct to the best of my knowledge and belief.

_____
Doug Keller

STATE OF OHIO         )
                      )
CCOUNTY OF HAMILTON   )

Subscribed and sworn to before me by Doug Keller by the said Doug Keller on this 24th day of March, 2010.

_____
Notary Public

19

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Motion for Temporary Restraining Order and Preliminary Injunction was served upon Thomas L. Gabelman, Attorney for Defendant Hamilton County, Ohio Board of Commissioners; Defendant The City of Cincinnati, 801 Plum Street, Cincinnati, Ohio 45202; Defendant Riverbanks Renaissance, LLC, c/o Corporation Service Company, 50 West Broad Street, Suite 1800, Columbus, OH 43215; Defendant Burgess & Niple, Inc., 312 Plum Street, 12th Floor, Cincinnati, OH 45202; and upon Defendant Prus Construction Co., 5326 Wooster Road, Cincinnati, OH 45226 by Certified Mail on this 25th day of March, 2010

_____
Roger W. Healey (0004809)
Trial Attorney for Plaintiff